UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ROBERT MADAY,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | No. 17 C 1852 |
| v. ) | |
| ) | Chief Judge Rubén Castillo |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM OPINION AND ORDER

Robert Maday ("Petitioner") challenges his federal convictions for bank robbery, escape, and related offenses in a petition filed pursuant to 28 U.S.C. § 2255. (R. 1.) For the reasons stated below, the petition is denied.

In August 2009, Petitioner pled guilty to multiple bank robberies in a case assigned to U.S. District Judge Robert W. Gettleman. *United States v. Maday*, 799 F.3d 776, 777 (7th Cir. 2015). While he was in custody awaiting sentencing in that case, he was transported by two county police officers to face sentencing in state court for several unrelated crimes. *Id.* During the trip, he overpowered the officers and escaped from their custody; while at large he "committed a rich mixture of federal and state offenses, including bank robbery, . . . carjacking, and using or carrying a gun in connection with the other offenses." *Id.* He was prosecuted in state court for the carjacking and in this Court for bank robbery and related offenses. *Id.* After a five-day jury trial, Petitioner was convicted of five separate offenses: escaping from federal custody in violation of 18 U.S.C. § 751 (Count One); using, carrying, and brandishing a weapon during and in relation to his escape in violation of 18 U.S.C. § 924(c) (Count Two); aggravated bank robbery in violation of 18 U.S.C. § 2113 (Count Three); using, carrying, and brandishing a

weapon during and in relation to the bank robbery in violation of 18 U.S.C. § 924(c) (Count IV); and possessing a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(e)(1) (Count V). *United States v. Maday*, No. 11 CR 847, R. 134. He was ultimately sentenced to a combined prison term of 62 years in the case assigned to this Court and the case assigned to Judge Gettleman. *Maday*, 799 F.3d at 778.

He appealed in both cases, and the U.S. Court of Appeals for the Seventh Circuit consolidated the two cases for hearing and decision. *Id.* at 776-80. In both cases, Petitioner's appointed attorneys moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that they were unable to identify any non-frivolous issue for appeal. *Id.* at 776-77. Among other potential issues, counsel in the case assigned to this Court explored whether Petitioner could challenge the sufficiency of the evidence on Count IV pertaining to whether he had carried a gun during the bank robbery. *United States v. Maday*, Appeal No. 14-2154, R. 23 at 20-22. Ultimately, counsel determined that an argument on this ground would be frivolous. *Id.* Petitioner filed a *pro se* response to counsel's *Anders* brief, arguing that the evidence was insufficient to sustain the jury's verdict on Count IV because the bulge under his shirt was a hat, not a gun, and in his view the government had failed to prove otherwise. *Id.*, R. 27 at 14-21. Petitioner relatedly argued that the prosecutor engaged in misconduct by mischaracterizing the testimony of the bank tellers regarding whether they ever actually saw a gun during the robbery. *Id.* The Seventh Circuit agreed with counsel that this argument was frivolous. *Maday*, 799 F.3d at 777. The court affirmed Petitioner's conviction and sentence imposed by this Court in all

2

respects.[1] *Id.* at 776-80. The U.S. Supreme Court denied his petition for certiorari. *Maday v. United States*, 136 S. Ct. 1688 (2016).

In March 2017, Petitioner filed his Section 2255 petition asserting four claims: (1) actual innocence with respect to Count IV; (2) prosecutorial misconduct; (3) ineffective assistance of counsel; and (4) "custody" issues. (R. 1, Pet.) The government filed a response arguing that Petitioner has failed to establish an entitlement to relief under Section 2255. (R. 7, Resp.) Thereafter, Petitioner filed a reply in support of his petition. (R. 9, Reply.)

## LEGAL STANDARD

Under Section 2255, a federal prisoner can seek to vacate his sentence on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under Section 2255 "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013).

## ANALYSIS

### I. Actual Innocence of Count IV

In his first claim, Petitioner asserts that he is actually innocent of Count IV because he did not in fact have a gun during the robbery; he claims that the bulge under his shirt seen by the bank tellers was a baseball cap, not a gun. (R. 1, Pet. at 4; R. 5, Mem. at 1-8.) This identical argument was included in his counsel's *Anders* brief and in Petitioner's *pro se* response brief, and the Seventh Circuit determined that the argument was frivolous. *Maday*, 799 F.3d at 777; *see also Maday*, Appeal No. 14-2154, R. 23 at 21-22; *id.*, R. 27 at 14-21. A Section 2255 petitioner

---

[1] The Seventh Circuit found an error in the sentence imposed by Judge Gettleman and remanded that case for resentencing, but otherwise affirmed Petitioner's conviction in the related case. *Maday*, 799 F.3d at 777-80.

3

is not permitted to "relitigate in a collateral proceeding an issue that was decided on his direct appeal." *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004). It makes "no difference" that the issue was presented in connection with a motion to withdraw under *Anders*: "Presented is presented, whether in an *Anders* brief or in any other format; and if an appeal is dismissed as frivolous, that is a binding adjudication that the claims presented in it had no merit at all, rather than an invitation to refile." *Id.* Because this claim was already raised on direct appeal, Petitioner cannot relitigate the claim in this proceeding "absent changed circumstances." *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). He has not identified any changed circumstances that would allow him to relitigate the claim and, therefore, he is precluded from raising this claim.

Even if the claim could be considered, it is frivolous, as the Seventh Circuit concluded on direct appeal. In considering the sufficiency of the evidence, the Court must "view the evidence in the light most favorable to the government" and can "overturn a conviction only if the record contains no evidence from which a reasonable juror could have found the defendant guilty." *United States v. Kohli*, 847 F.3d 483, 489 (7th Cir. 2017) (citation omitted). Because of this high standard, a defendant challenging the sufficiency of the evidence bears a "nearly insurmountable" burden. *Id.* (citation omitted).

There is more than enough evidence in the record to support the jury's verdict on Count IV. Among other evidence, one of the transporting officers testified at trial that Petitioner stole his and his partner's loaded guns during his escape. *Maday*, No 11 CR 847, Trial Tr. at 213-17, 229-41. One of the bank tellers testified that she saw something "bulging out" from Petitioner's shirt, which appeared to her to be "the back handle of the shape of the gun." *Id.* at 364-65. Another teller testified that Petitioner announced during the robbery that he had a gun. *Id.* at 383. At the time of his arrest a few hours after the robbery, police discovered a gun in Petitioner's

waistband and another on the floor of the vehicle he was driving. *Id.* at 430-32. Petitioner also confessed to agents of the Federal Bureau of Investigation ("FBI") after his arrest that he had a gun with him during the bank robbery. *Id.* at 529-30. Viewing this evidence in the light most favorable to the government, it was certainly enough for a rational jury to conclude that Petitioner had a gun during the robbery. *See Kohli*, 847 F.3d at 489.

Petitioner does not deny that he stole the officers' guns during his escape or that he had the guns with him when he decided to rob the bank; however, he claims that he "left the guns in the car" when he went inside the bank. (R. 5, Mem. at 8.) The Court is not required to simply credit Petitioner's self-serving statements about how he conducted the bank robbery. Instead, the Court must "view the evidence in the light most favorable to the government" at this stage. *Kohli*, 847 F.3d at 489 (citation omitted).

Petitioner also argues that "enhanced color images" of the bank surveillance video printed by a family friend and submitted with his petition lend support to his argument that it was a baseball cap, rather than a gun, tucked in his waistband. (R. 5, Mem. at 1-10, 14 & Exs. A-F.) He believes this evidence is so definitive that "[i]f a jury of 1,000 people were shown the digitally enhanced imagery . . . [and] asked does the bulge look like A) a gun, or B) a baseball cap, 1,000 people would say a baseball cap." (R. 5, Mem. at 10.) To the extent Petitioner is trying to assert a free-standing claim based on "newly discovered evidence," rather than simply challenging the sufficiency of the evidence presented at trial, such a claim does not entitle him to relief under Section 2255. *See Masarik v. United States*, 630 F. App'x 630, 631 (7th Cir.), *cert. denied*, 136 S. Ct. 2470 (2016) ("Newly discovered evidence may relieve a prisoner from a procedural default, and thus permit litigation on genuine constitutional or statutory claims, but new evidence is not itself a basis for collateral relief."); *see also McQuiggin v. Perkins*, 133 S.

Ct. 1924, 1931 (2013) (recognizing that the Supreme Court has never "resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence").

In any event, the Court disagrees that the images submitted by Petitioner undermine the jury's verdict or establish his actual innocence. Petitioner claims that the images were obtained and sent to him by a family friend, but he did not provide an affidavit or other statement from this friend detailing the process he used to obtain the images; it is thus unknown whether the video was improperly manipulated in some way to obtain the images. Even if the images could be properly authenticated, they are no less ambiguous than the pictures introduced by the government at trial. (*See* R. 7-1, Exs. to Resp.) The images appear to show an object under Petitioner's shirt that changes shape and size depending on the angle of the camera and the flow of Petitioner's shirt. In a few of the photos, the object appears to have hard edges; it does not much resemble a baseball cap—what Petitioner claims it was—in any of the pictures. Even if the Court were to discount the video evidence entirely, there was more than enough testimony and other evidence, including the guns recovered from Petitioner at the time of his arrest and the inculpatory statement he made to the FBI, for a reasonable jury to conclude that he had a gun during the robbery. Thus, the Court finds Petitioner's first claim unavailing.

## II. Prosecutorial Misconduct

In a closely related claim, Petitioner asserts that the prosecutor committed misconduct by mischaracterizing the evidence pertaining to whether he had a gun with him during the bank robbery. (R. 1, Pet. at 5; R. 5, Mem. at 4-6.) Petitioner raised this argument in his *pro se* response to counsel's *Anders* brief, *Maday*, Appeal No. 14-2154, R. 27 at 14-21, and the Seventh Circuit found the argument to be frivolous, *Maday*, 799 F.3d at 777. Absent changed circumstances,

which Petitioner has not demonstrated, he cannot relitigate the claim in this proceeding. *White*, 371 F.3d at 902.

Even if Petitioner could overcome this procedural hurdle, the claim has no merit. In evaluating a claim of prosecutorial misconduct, it is not enough that a prosecutor made remarks that were "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations omitted). Rather, the "relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (citation and internal quotation marks omitted). In deciding whether this standard is met, the Court considers a number of factors, including: "(1) whether the prosecutor misstated the evidence; (2) whether the remark implicated a specific right; (3) whether the defendant invited the response; (4) the efficacy of curative instructions; (5) the defendant's opportunity to rebut; and (6) the weight of the evidence." *United States v. Serfling*, 504 F.3d 672, 677 (7th Cir. 2007).

Petitioner points to a number of comments by the prosecutor that in his view represented a "sustained campaign of misdirection and manipulation of the facts." (R. 5, Mem. at 12.) For instance, he complains about the prosecutor's comment, "It defies common sense that the defendant left [the guns] in the car and yet suspiciously has a bulge under his shirt that looks like a gun," and her statement, "Of course he had a gun that day." (*Id.*) These types of comments were not improper; they merely represented the government's view of the evidence, which was that the bulge under Petitioner's shirt was the butt of a gun. Counsel was permitted to make such arguments in support of the government's case. *See United States v. Collins*, 966 F.2d 1214, 1226 (7th Cir. 1992) ("[T]he function of closing argument is to allow counsel for each side to put forth that side's best case. And in doing so, counsel is permitted to suggest factual inferences and

7

to argue how the law applies to these facts."). Indeed, Petitioner's attorney made similar arguments in support of the defense case. *See Maday*, No. 11 CR 847, Trial Tr. at 747-55.

Petitioner also believes that the prosecutor misstated the evidence when she argued that he pulled up his shirt to display the gun during the robbery. (R. 9, Reply at 6.) The prosecutor did not misstate the evidence. Instead, her argument was based on Petitioner's own statement to the FBI that he had lifted up his shirt to display the gun to one of the tellers during the robbery. *See Maday*, No. 11 CR 847, Trial Tr. at 530. The prosecutor played the video during her closing, focusing on the part which she believed showed Petitioner pulling up his shirt. *Id.* at 790. She stated, "It's not dramatic. . . . He just lifts the corner, where there might be a little glimmer of the gun." *Id.* This Court has viewed the video and finds that it reasonably supports the prosecutor's argument that Petitioner made a subtle movement with his right hand that could be interpreted as lifting up the edge of his shirt. But more importantly, the jury viewed the video multiple times during the trial and could reach its own conclusion about what it showed. The Court twice instructed the jury that arguments and statements by counsel are not evidence. *Id.* at 127, 794. The evidence against Petitioner was overwhelming even if one were to discount the video entirely. Based on the record, Petitioner has not demonstrated any impropriety by the government or any unfair prejudice.

Petitioner also argues that the prosecutor misled the grand jury by making certain statements regarding whether any of the bank tellers actually saw him with a gun. (R. 5, Mem. at 4; R. 9, Reply at 7.) In his view, this alleged error rendered the entire proceeding invalid. (*Id.*) Again, Petitioner raised this exact argument on direct appeal, and he is barred from relitigating it in this proceeding absent some changed circumstance, which he has not demonstrated. *White*, 371 F.3d at 902. Even if the Court could reach the claim on the merits, it would not warrant

8

overturning Petitioner's conviction. Aside from the fact that the prosecutor did not misstate the evidence, "a petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted." *United States v. Knight*, 342 F.3d 697, 713 (7th Cir. 2003) (citing *United States v. Mechanik*, 475 U.S. 66, 67 (1986)); *see also Lafler v. Cooper*, 566 U.S. 156, 166 (2012). In other words, an error by the prosecutor during the grand jury proceedings must be considered harmless given that a petit jury separately heard the evidence and determined that Petitioner was guilty beyond a reasonable doubt. *See United States v. Vincent*, 416 F.3d 593, 602 (7th Cir. 2005) (holding that petit jury's subsequent conviction of defendant rendered government's alleged misrepresentations to grand jury harmless beyond a reasonable doubt); *United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004) ("[T]he petit jury's guilty verdicts render harmless any possible error in the grand jury proceedings."). The Court finds that Petitioner's second claim does not entitle him to relief under Section 2255.

### III. Ineffective Assistance of Counsel

Petitioner next claims that he received ineffective assistance from his trial counsel, Anthony Sassan. (R. 1, Pet. at 5; R. 5, Mem. at 13-18.) Under the Sixth Amendment, a criminal defendant is entitled to "'effective assistance of counsel'—that is, representation that does not fall 'below an objective standard of reasonableness' in light of 'prevailing professional norms.'" *Bobby v. Van Hook*, 558 U.S. 4, 16 (2009) (per curiam) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). To prevail on a claim of ineffective assistance of counsel, the petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced him. *Strickland*, 466 U.S. at 687.

9

On the deficiency prong, the central question is "whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). Counsel "need not be perfect, indeed not even very good, to be constitutionally adequate." *McAfee v. Thurmer*, 589 F.3d 353, 355-56 (7th Cir. 2009) (citation omitted); *see also Harrington*, 562 U.S. at 110 ("[T]here is no expectation that competent counsel will be a flawless strategist or tactician."). Additionally, counsel's strategic decisions are entitled to considerable deference. *Yu Tian Li v. United States*, 648 F.3d 524, 527-28 (7th Cir. 2011). "The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 528 (citation omitted). In evaluating counsel's performance, the Court must avoid the benefit of hindsight and must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, 562 U.S. 115, 125 (2011). Ordinarily the Court must consider counsel's performance "as a whole rather than focus on a single failing or oversight." *Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010). As the Seventh Circuit has explained: "[I]t is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks." *Sussman v. Jenkins*, 636 F.3d 329, 351 (7th Cir. 2011) (citation omitted).

On the prejudice prong, the defendant must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.* "In assessing prejudice under *Strickland*, the question is not

whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. To warrant overturning a conviction, "[t]he likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

In his petition, Petitioner acknowledges that Sassan "fought zealously" on his behalf "from the arraignment through to sentencing." (R. 5, Mem. at 13.) Petitioner nevertheless argues that Sassan failed to adequately challenge the video evidence and instead "utterly defer[red] to the government's exhibits." (*Id.* at 14.) Contrary to Petitioner's argument, the record shows that Sassan recognized the critical nature of the video evidence and sought to undercut it at every possible stage. He elicited testimony from the government's witnesses to highlight the fact that none of the tellers actually saw Petitioner with a gun. *Maday*, No. 11 CR 847, Trial Tr. at 360-61, 372-77, 392. With one of the tellers he went through the video frame-by-frame to emphasize that it did not clearly show a gun in Petitioner's waistband. *Id.* at 394-97. He did the same thing during his cross-examination of one of the FBI agents who had investigated the case. *Id.* at 548-49. Counsel argued in both opening and closing that the video was equivocal at best and did not meet the standard of proving guilt beyond a reasonable doubt. *Id.* at 143, 149, 743, 749-52. Counsel played the video again during his closing to highlight ambiguities in it and to argue that the bulge under Petitioner's shirt did not resemble a gun. *Id.* at 770-71.

Petitioner believes that counsel did not do enough to counter the video and points to the still shots of the video that he submitted with his petition. (R. 5, Mem. at 14.) Petitioner believes that counsel should have obtained images like these for use at trial and, if necessary, retained an expert to assist him. (*Id.*) But the record reflects that Sassan did in fact consider retaining an expert to analyze the video prior to trial. *Maday*, No. 11 CR 847, R. 35. In a motion filed with

11

the Court, counsel argued that the video was inconclusive as to whether "a hand gun can be identified in the bank robber's waistband as described by the bank employees." *Id.* at 2. He requested permission to "submit the surveillance photographs to the appropriate video/photographic expert in order to analyze whether said media may be enhanced in such a manner to either confirm or rule out the presence of a hand gun in the bank robber's waistband." *Id.* at 3. It is clear from his motion that he made specific efforts to locate such an expert, as he provided the name of the facility (Stutchman Forensic Laboratory) as well as detailed information about the charges that would likely be incurred. *Id.*

Some months later, however, after considering the matter further (and after the Court had denied the motion to suppress Petitioner's inculpatory statement to the FBI), counsel decided to withdraw his motion. *Id.*, R. 222 at 2. Counsel's strategic decisions are entitled to considerable deference, and Petitioner must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Yu Tian Li*, 648 F.3d at 527-28. Petitioner has not done that here. Indeed, counsel may well have concluded that enhancement of the video could actually *confirm* that the bulge in Petitioner's shirt was a gun, particularly in light of Petitioner's statement to the FBI that he was carrying a gun during the robbery. Instead of trying to enhance the video, counsel chose a strategy of exploiting weaknesses in the video as it existed to argue reasonable doubt. Based on the options available to him, this strategy was not unreasonable.

The Court also considers Sassan's overall performance during this difficult case. *See Sussman*, 636 F.3d at 351. As the U.S. Supreme Court has recognized, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington*, 562 U.S. at 111. The record here reflects that Sassan appeared as

appointed counsel shortly after Petitioner's arrest and that he took many steps prior to trial to protect Petitioner's interests. No. 11 CR 847, R. 7. He filed a motion seeking discovery materials from the government, *id.*, R. 21, a motion to suppress Petitioner's statement to the FBI, *id.*, R. 25, a motion to appoint a video expert (explained above), *id.*, R. 35, a motion to appoint an investigator, *id.*, R. 36, and a motion to appoint a polygraph expert, *id.*, R. 37. He prepared for and presented evidence at three separate evidentiary hearings on the motion to suppress and submitted a post-hearing brief in support of his motion. *Id.*, R. 52, 54, 57, 59. After the motion was denied, he focused on the upcoming trial, filing a motion to exclude evidence, *id.*, R. 72, a motion to dismiss two counts of the indictment, *id.*, R. 75, another motion to suppress, *id.*, R. 84, and proposed voir dire questions, *id.*, R. 110. He also sought reconsideration of various pretrial rulings. *Id.*, R. 93.

At trial, Sassan was a vigorous advocate for Petitioner. He raised numerous objections (many of which were sustained), gave a compelling opening statement, carefully cross-examined the government's witnesses to emphasize weaknesses in the government's case, moved for a directed verdict, alerted the Court to an issue with media coverage, presented several witnesses in support of the defense case, actively participated in the jury instruction conference, and made a lengthy closing argument that carefully parsed out the evidence as to each count. *Id.*, Trial Tr. at 1-820. After the trial, he filed a detailed motion for a new trial or, alternatively, a judgment of acquittal. *Id.*, R. 141. He separately moved for a psychological evaluation to assist the Court with the sentencing determination. *Id.*, R. 160. He obtained character letters in support of Petitioner, *id.*, R. 172, 175, 183, filed objections to the presentence report, *id.*, R. 187, filed a sentencing memorandum, *id.*, R. 188, and moved for a stay of sentencing pending the outcome of proposed changes to federal sentencing laws, *id.*, R. 173. At the sentencing hearing, Sassan was well-

13

prepared and argued persuasively for leniency in the face of Petitioner's lengthy criminal record and extensive criminal conduct in this case. *Id.*, R. 221, Sentencing Tr. at 1-66.

The Court also considers that this was not an easy case to defend, as it involved disturbing allegations of a defendant who had escaped from two armed officers and embarked on a crime spree. The government had irrefutable video evidence of Petitioner committing a bank robbery, and Petitioner made a highly damaging statement to law enforcement after his arrest describing his illegal activities in great detail. The record reflects that Sassan made a valiant effort to undercut this evidence. In addition to attacking the video in the ways outlined above, he called multiple witnesses during the defense case to attack the reliability of Petitioner's statement to the FBI. He elicited testimony from a paramedic, doctors, and others to show that Petitioner was experiencing significant back pain and was not being treated for mental health issues at the time he made the statement. *Id.*, Trial Tr. at 581-677. Although Sassan's efforts ultimately did not succeed with the jury, the Court finds this attributable to the overwhelming evidence of Petitioner's guilt rather than to any failing by counsel. *See United States v. Farr*, 297 F.3d 651, 657-58 (7th Cir. 2002) ("[L]awyers are not miracle workers. Most convictions follow ineluctably from the defendants' illegal deeds.") (citation omitted). In short, the record shows that Petitioner clearly received the "'counsel' of which the sixth amendment speaks." *Sussman*, 636 F.3d at 351. The Court finds that Petitioner has failed to establish deficient performance.

Even if Petitioner could satisfy the deficient performance prong, he must also demonstrate a substantial likelihood of a different outcome had counsel obtained pictures like those submitted with the petition. *See Harrington*, 562 U.S. at 112. He has not done so. As stated above, the pictures submitted by Petitioner have not been sufficiently authenticated and, assuming they could be, they are ambiguous at best. (*See* R. 5, Mem., Exs. A-F.) The video

14

presented at trial was already ambiguous regarding whether the bulge under Petitioner's shirt was a gun—a point which Sassan highlighted throughout the trial—and the jury nevertheless voted to convict. The Court cannot conclude that the pictures submitted by Petitioner would have meaningfully added to his defense or likely resulted in a different outcome. For these reasons, the Court finds that Petitioner is not entitled to relief.

**IV.    Custody Issues**

In his final claim, Petitioner raises issues pertaining to his custody. (R. 1 Pet. at 6; R. 5, Mem. at 20-22.) Specifically, he complains that he is currently being housed in a state correctional facility rather than a federal one. He describes the harsh conditions at the state facility, including that he is confined to his cell most of the day and has limited access to educational programs and other activities. (R. 5, Mem. at 20-21.) To the extent Petitioner is attempting to challenge the conditions themselves, his claim is not cognizable in a Section 2255 petition. Section 2255 provides a means of attacking the *legality* of a federal sentence, not the conditions under which it is served. *See* 28 U.S.C. § 2255(a); *see also Muhammad v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a [42 U.S.C.] § 1983 action." (internal citation omitted)). If Petitioner has concerns about the conditions of his confinement at the state facility, he is free to pursue an action under 42 U.S.C. § 1983, subject to the constraints of the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(a)(1), (2). But the complaints he raises do not entitle him to have his federal conviction overturned.

Petitioner also asks the Court to order that he be transferred to a federal facility to serve the remainder of his sentence. (R. 5, Mem. at 20-22; R. 9, Reply at 8.) The Court has no

15

authority to order such relief. Instead, it is up to the federal Bureau of Prisons ("BOP") to determine where Petitioner serves his sentence. *See United States v. Wilson*, 503 U.S. 329, 335 (1992) ("After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence."); *see also* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted[.]"). Petitioner may have administrative or other remedies available to challenge the BOP's determination, but a Section 2255 petition is not the proper vehicle for pursuing such relief. *See Taylor v. Lariva*, 638 F. App'x 539, 541 (7th Cir. 2016); *Romandine v. United States*, 206 F.3d 731, 736 (7th Cir. 2000). For all these reasons, the petition is denied.

## V. Certificate of Appealability

As a final matter, the Court must decide whether to grant Petitioner a certificate of appealability. To obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that Petitioner's claims are not cognizable in this proceeding or are otherwise without merit. The Court finds no basis to conclude that reasonable jurists would debate the outcome of the petition or find a reason to encourage Petitioner to proceed further. Accordingly, the Court declines to grant him a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the petition (R. 1) is DENIED. The Petitioner is DENIED a certificate of appealability.

ENTERED: /s/ Rubén Castillo
Chief Judge Rubén Castillo
United States District Court

Dated: May 26, 2017